724 F.Supp. 353 (1989)
Gertrude COLLINS, Administrator of the Estate of James T. Collins and Gertrude Collins, in her own right
v.
AMERICAN RED CROSS, American National Red Cross, Graduate Hospital, Louis F. Plzak, M.D. and Daniel J. Woody, M.D.
Civ. A. No. 89-1704.
United States District Court, E.D. Pennsylvania.
October 25, 1989.
Thomas R. Kline, Beasley, Colleran, Erbstein, Thistle, Kline & Murphy, Philadelphia, Pa., for plaintiffs.
Howard M. Klein, William J. O'Brien, Conrad & O'Brien, P.C., Philadelphia, Pa., for defendants.

MEMORANDUM
WALDMAN, District Judge.
Presently before the court is plaintiff's motion to remand the above-captioned case *354 to the Philadelphia Court of Common Pleas.

I. Background

The plaintiff has alleged state tort claims for damages sustained from an ultimately fatal transfusion of HIV contaminated blood supplied by defendant American Red Cross of Philadelphia, a local chapter of the American National Red Cross (hereinafter collectively referred to as "Red Cross"). Perfect diversity of citizenship between the parties does not exist. The case presents no substantive federal question.
Removal was based on 28 U.S.C. § 1441(a) and (b) and premised strictly on 36 U.S.C. § 2, the provision in the Red Cross charter which provides that the Red Cross shall have "the power to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." The plaintiff has moved to remand the case on the grounds that the court lacks subject matter jurisdiction and that, in any event, the removal petition is fatally flawed because all defendants did not join in the petition within 30 days after service of the complaint as required by 28 U.S.C. 1446(b).

II. The District Court Lacks Subject Matter Jurisdiction in This Case

Whether the Red Cross has the right to remove this case depends on whether it is an action over which the district court has original jurisdiction. There are 14 district court decisions from nine federal districts resolving the jurisdictional issue presented here on virtually identical facts. In seven cases, the court held that the "sue and be sued" language in the Red Cross charter conferred original federal subject matter jurisdiction.[1] In seven cases, the court held that there was not jurisdiction.[2]
The courts which have held that original jurisdiction exists have relied on Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), which they read as holding that a reference to federal courts by Congress in a "sue and be sued" clause requires a finding of conferral of original federal jurisdiction in all subsequent cases. The courts which have held that there is not jurisdiction have skirted Osborn, determined that the Red Cross charter provision merely confirms the organization's capacity to sue and does not fall within the ambit of Osborn or, in at least two cases, appear to find that 28 U.S.C. § 1349 effectively vitiates Osborn. The Court held in Osborn that the power to confer federal jurisdiction was rooted in the "arising under ... the Laws of the United States" language in Article 3, Section 2 of the Constitution, in that, all actions by or against a Congressionally created corporation necessarily arise under such a law.
Section 1349 provides that "the district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock." It was enacted by Congress in 1925 in reaction to the Pacific Railroad Removal Cases, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885) and other cases in which the Courts held that federal incorporation conferred federal court jurisdiction, applying the Osborn rationale in view of the 1875 law giving federal courts jurisdiction in cases arising under *355 the laws of the United States.[3] Congress moved to close the floodgate thus opened. See Crum v. Veterans of Foreign Wars, 502 F.Supp. 1377, 1382 (D.Del.1980).
In the case of non-stock corporations, federal government control is the touchstone for application of § 1349. See Jackson v. Tennessee Valley Authority, 462 F.Supp. 45, 52 (M.D.Tenn.1978), aff'd, 595 F.2d 1120 (6th Cir.1979). Courts on both sides of the jurisdiction question have held that the Red Cross is not subject to government control, and indeed it would lose its recognition by the International Red Cross if it were. See Griffith, supra, 678 F.Supp. at 185-86; C.H., 684 supra, at 1020-22. For the reasons cogently set forth therein, this court concludes that for purposes of § 1349, there is not government control of the Red Cross.
In granting motions to remand in what are likely destined to be known as the Red Cross blood cases or the Red Cross recipient cases, those courts relying on section 1349 may find some support in Puerto Rico v. Russell & Co., 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1932). In that case the Court appears to question the viability of Osborn in the post-§ 1349 era. Id. at 485, 53 S.Ct. at 450. See also Gully v. First National Bank, 299 U.S. 109, 113, 57 S.Ct. 96, 97-98, 81 L.Ed. 70 (1936).
The court is not persuaded, however, that § 1349 would negate a specific conferral of federal jurisdiction to a nongovernment controlled federally chartered organization. That section 1349 precludes an inference of jurisdiction from the mere grant of a federal charter and evinces a general intent of Congress to limit federal jurisdiction does not mean that Congress could not specifically confer federal jurisdiction on a particular federally chartered corporation if it chose to do so in a given instance. After 1925, however, it seems reasonable to assume that in doing so, Congress would specify that all cases involving the corporation "shall be deemed to arise under the laws of the United States" or that the corporation "shall be deemed to be an agency of the United States" or select other such language calculated to manifest an intent to confer federal jurisdiction.
The critical question remains whether Congress did or did not confer original federal jurisdiction in all Red Cross cases when on May 8, 1947 it added the words "State or Federal" to the original 1900 charter clause which provided that the Red Cross shall have the power "to sue and be sued in courts of law and equity within the jurisdiction of the United States."[4] The language itself appears only to empower or authorize the Red Cross to litigate in federal courts where the jurisdictional prerequisites are satisfied. See Fed.R.Civ.P. 17(b). The Supreme Court in Osborn, however, found that in using a similar provision in the charter of the Second Bank of the United States, Congress had conferred original federal court jurisdiction.[5] As noted by several courts in the earlier Red Cross recipient cases, the Osborn opinion has been subject to substantial criticism, but has not been expressly overruled. See C. Wright, Federal Courts § 17 n. 6 (4th ed.1983).
In the context of the times, the Osborn language appears to be a reaction to the Court's holding in Bank of the United States v. Deveaux, 9 U.S. (5 Cranch) 61, 3 L.Ed. 38 (1809) that statutory language empowering the First Bank to sue and be sued "in courts of record, or any other place whatsoever" merely endowed the Bank with the capacity to litigate, noting that the clause contained no mention of the federal courts. The language in the Second Bank charter may well have appeared to the Court in Osborn as clearly and uniquely designed to confer federal jurisdiction in a manner inferentially suggested *356 by the Court in Deveaux. The court does not view Osborn, however, as holding that every statutory "sue and be sued" clause mentioning federal courts absolutely and forever thereafter, regardless of the context, mandates a finding that Congress created original federal jurisdiction. In the 163 years between Osborn and the first of the current Red Cross recipient cases, no court opinion has been identified that held the mention of federal courts in a statutory "sue and be sued" clause necessarily established original federal jurisdiction.
The Red Cross has argued that the more modern case of D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) held that a "sue and be sued in state or federal court" provision established original federal jurisdiction for FDIC cases. In D'Oench, the court did not analyze or interpret the "sue and be sued" language in the FDIC charter and did not hold that a reference to federal courts in a "sue and be sued" clause conferred original federal jurisdiction. The issue before the Court in D'Oench was whether a federal court sitting in a non-diversity case should apply state law or federal common law.[6] The Court simply stated, without analysis or comment, that jurisdiction in the case was premised on 12 U.S.C. § 264(j), the section of the Federal Reserve Act in which Congress authorized the FDIC "to sue or be sued in any court of law or equity, State or Federal" and provided that "all suits of a civil nature at common law or equity to which the Corporation shall be a party shall be deemed to arise under the law of the United States." This latter language clearly distinguishes the FDIC from the Red Cross.
The Red Cross seeks to minimize this by arguing that it is significant that the Court "relegated this provision to a footnote." It seems to the court that anything the Supreme Court finds it worthwhile to say should be regarded as meaningful. The court is aware that yesterday's footnote may form the basis of tomorrow's holding. Defendant's argument is particularly unpersuasive in view of the relevant legislative history.
The original enabling legislation of June 16, 1933 provided, in language virtually identical to the Red Cross charter, that the FDIC would have the power "to sue and be sued, complain and defend, in any court of law or equity, State or Federal." Banking Act of 1933, ch. 89, § 8, 48 Stat. 168 (June 16, 1933) (which added section 12B to the Federal Reserve Act and created the FDIC). On August 23, 1935, this provision was amended to add the "shall be deemed to arise under the laws of the United States" language highlighted in the Supreme Court's footnote in D'Oench. Banking Act of 1935, ch. 614, § 101, 49 Stat. 684. The Report of the Senate Committee on Banking and Currency makes clear that the purpose of this amendment was to confer original federal subject matter jurisdiction in FDIC cases. See S.Rep. No. 1007, 74th Cong., 1st Sess. 5. See also FDIC v. George-Howard, 153 F.2d 591, 593 (8th Cir.1946), cert. denied, 329 U.S. 719, 67 S.Ct. 53, 91 L.Ed. 623 (1946); Walton, supra, at 828.
The question really is not whether Osborn may reflect more than a finding of Congressional intent in the context of a particular time and statute. Rather, it is whether a century and a half later, at a time when rightly or wrongly Osborn had been criticized and § 1349 had been enacted, Congress would manifest an intent to confer original federal jurisdiction by merely inserting a reference to "State or Federal" courts into a "sue and be sued" clause. Even if the Court in Osborn concluded as a general matter in 1824 that this was a most logical way for Congress to manifest such an intent, it would not preclude a different subsequent finding if by 1947 Congress clearly was using other and more specific language to confer original federal jurisdiction.
*357 The Red Cross argues that the legislative history behind the 1947 amendment to its charter, however, does evince the intent of Congress on that occasion to confer original jurisdiction. In support of its contention, the Red Cross points to Recommendation No. 22 and the language accompanying it in the so-called Harriman Committee Report. The American National Red Cross Report of The Advisory Committee on Organization, at 34 (June 11, 1946). The 27-member committee, chaired by E. Roland Harriman, was appointed by the chairman of the Red Cross to recommend changes in its charter, last amended in 1905, to make the governing board more representative and to ensure the most effective handling of its programs. Id. at 3, 15. In the last section, under the heading "Miscellaneous Recommendations" appears No. 22 which simply provides that "The Charter should make it clear that the Red Cross can sue and be sued in the Federal Courts."
Even assuming that Congress adopted the language of this Report and not merely its recommendations, which does not appear to be the case, the court finds that the language in the three sentences accompanying Recommendation No. 22 is ambiguous at best. There is a reference to the "limited nature of the jurisdiction of the Federal Courts." The Report states, however, that "the Red Cross has in several instances sued in the Federal Courts, and its powers in this respect have not been questioned" but concludes that a more clear statement to this effect would be desirable.
It appears to be at least as likely as not that the Committee only was seeking to confirm powers it believed the Red Cross had already been granted and utilized pursuant to language in the original charter of the type held since Deveaux merely to create a general capacity to litigate.[7] The available legislative history suggests nothing to the contrary. Rather, it suggests that at least several Senators viewed the amendment as conferring powers upon the corporation, not as conferring new jurisdiction upon the courts, and one Senator viewed its purpose as making clear that although it was a federal corporation the Red Cross could be sued in a state court. See Hearing on S. 591 Before the Senate Committee on Foreign Relations, 80th Congress, 1st Sess. 7-11 (1947).
The case of Patterson v. American National Red Cross, 101 F.Supp. 655 (M.D. Fla.1951) further suggests that the Red Cross did not view the 1947 amendment as creating a new basis for federal jurisdiction. In that case, the Red Cross resisted plaintiff's motion to remand a case that it had removed from a state court on the basis of diversity jurisdiction. The court in Patterson cited the 1947 amendment merely as proof that Congress envisioned the prospect of federal litigation in which the Red Cross was a party. Barely four years after the amendment was enacted, the Red Cross in Patterson did not even suggest that it conferred federal jurisdiction but, as did the court, viewed it merely as confirming the right of the organization to invoke diversity jurisdiction.[8]
Eleven weeks after amending the Red Cross charter, the same Congress passed legislation amending the charter of the Federal Crop Insurance Corporation. The FCIC's amended charter provided that it "may sue and be sued in its corporate name in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is hereby conferred upon such district court to determine such controversies without regard to the amount in controversy." (emphasis added) Act of August 1, 1947, ch. 440 § 7, 61 Stat. 719 (current version at 7 U.S.C. § 1506). That Congress felt the need to do this despite the presence of "sue *358 and be sued in any court, state or federal" language in the corporation's original charter is highly instructive. It is most improbable that Congress almost simultaneously would utilize language to confer original federal jurisdiction in Red Cross cases that it deemed insufficient without more to confer such jurisdiction in FCIC cases.
Similarly, in creating the Commodity Credit Corporation in 1948, Congress provided that "the district courts of the United States ... shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the Corporation." Act of June 29, 1948, ch. 704, § 4, 62 Stat. 1070. At a time when Congress was quite specific in expressing grants of federal jurisdiction and when it was so easy to do so, the court concludes that Congress in passing the 1947 amendment did not intend to confer original federal jurisdiction in Red Cross cases and should not be deemed to have done so.
While not expressly citing 28 U.S.C. § 1442(a)(1), defendant also argues that removal jurisdiction "is consistent with the important federal purposes of the Red Cross," and that recognition of such jurisdiction "would not open any floodgates."
The extent to which the defendant here appears to suggest that removal under § 1442(a)(1) is appropriate, its position is unavailing. For reasons already referenced, the court does not believe that the Red Cross is a federal agency or government controlled instrumentality. Moreover, even if it were, it could not avail itself of § 1442(a)(1) removal in the courts of this Circuit in which the statute is read as allowing removal by federal officers but not agencies. Loell Mfg. v. Export-Import Bank of the U.S., 843 F.2d 725, 733 (3d Cir.1988).
While certainly not dispositive, it might be noted that a finding of original federal jurisdiction here would open at least one "floodgate." It could well federalize all Red Cross cases. Not only would the emerging wave of contaminated blood cases be added to federal dockets but so could every contract dispute between a supplier and Red Cross chapter, as well as personal injury cases involving allegedly defective conditions on Red Cross premises or negligent acts by Red Cross agents and employees, to cite but a few examples.
Finally, defendant argues that any uncertainty as to the existence of jurisdiction should be resolved in favor of removal because an order to remand is not appealable. The cases are legion which hold to the contrary. See, e.g., Abels v. State Farm Fire & Casualty Company, 770 F.2d 26, 29 (3d Cir.1985); Adorno Enterprises v. Federated Department Stores, 629 F.Supp. 1565, 1573 (D.R.I.1986); PLM, Inc. v. Consolidated Rail Corporation, 490 F.Supp. 194, 197 (E.D.Pa.1980). Where a later determination that the district court lacked jurisdiction would make futile the federal litigation of a case, it is only prudent to resolve all doubts in favor of remand to a state court with unquestionable jurisdiction.

III. The Red Cross Removal Petition is Procedurally Deficient

Even if this case were one within the original jurisdiction of the court, it would have to be remanded because of the failure of the Red Cross to comply with the time requirements of 28 U.S.C. § 1446(b).
28 U.S.C. § 1441(a) provides that a case may be removed from a state court to a federal court with original jurisdiction "by the defendant or the defendants." Section 1446(a) and (b) require a defendant or defendants wishing to remove a case to file a notice of removal in the district court within thirty days of service of the complaint or summons.
The Red Cross was served on February 11, 1989, and its co-defendants were served on February 14, 1989. It filed a notice of removal on March 8, 1989, in which co-defendant Graduate Hospital joined. It is uncontroverted that the two defendant physicians did not join in the removal petition of March 8, 1989 or consent to it within thirty days of service. Subsequent to the expiration of the thirty-day period the individual defendants did indicate that they *359 consented to the removal of this case. The Red Cross explained that its failure timely to join the defendant physicians resulted from there being no entry of appearance on their behalf at the time the case was removed. The removal petition sets forth in relevant part that "Graduate Hospital, the only other defendant on whose behalf an appearance has been entered ... consents to and joins in this Notice of Removal."
The term "defendant or defendants" as used in section 1441(a) has consistently been read collectively so as to require the joinder or consent of all but nominal defendants, upon whom service has been made, within the thirty-day period to perfect removal. Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 3731 (2d ed.1985). See Adams v. Aero Services International, Inc., 657 F.Supp. 519, 521 (E.D.Va.1987); Crompton v. Park Ward Motors, Inc., 477 F.Supp. 699, 701 (E.D.Pa.1979). The thirty-day limitation is mandatory and the court is without discretion to expand it. Fellhauer v. City of Geneva, 673 F.Supp. 1445, 1447 (N.D.Ill. 1987); Balestrieri v. Bell Asbestos Mines, Ltd., 544 F.Supp. 528, 529 (E.D.Pa.1982). This requirement applies in federal question cases, as well as diversity cases. See Knowles v. American Tempering, Inc., 629 F.Supp. 832, 835 (E.D.Pa.1985); U.S. v. Bluewater-Toltec Irrigation District, 580 F.Supp. 1434, 1441 (D.N.M.1984), aff'd, 806 F.2d 986 (10th Cir.1984); Hess v. Great Atlantic & Pacific Tea Co., 520 F.Supp. 373, 375 (N.D.Ill.1981).
The Red Cross argues that because it was the only defendant who could invoke the court's removal jurisdiction, it did not have to obtain the consent of its co-defendants at all. The Red Cross cites cases in which removals by federal officers, the FDIC and FSLIC were upheld without the joinder or consent of their co-defendants and contends that "the Red Cross is in the same position."
The three federal officer cases cited by the Red Cross were removed from state courts pursuant to 28 U.S.C. § 1442, not § 1441. A reading of those cases makes clear that distinctive language in § 1442 permits removal by a federal officer alone but that § 1441 removal requires unanimous joinder within the thirty-day period. See, e.g., Ely Valley Mines, Inc. v. Hartford Accident & Indemnity Co., 644 F.2d 1310, 1315 (9th Cir.1981) (§ 1442 represents exception to general rule under §§ 1441 and 1446 that all defendants must join in removal petition).
The FDIC and FSLIC cases relied on by the Red Cross are also inapposite. All of the cases cited were decided after October 16, 1966 when the Financial Institutions Supervisory Act became law. In that Act, Congress expressly provided that the FDIC and FSLIC could remove any action to which they were parties from state to federal courts. See 12 U.S.C. §§ 1730(k)(1) and 1819(4). A reading of these cases makes clear that these statutes exempt these corporations from the joinder and other requirements of § 1441 which begins "Except as otherwise expressly provided by Act of Congress." See, e.g., In Re Federal Savings & Loan Insurance Corp., 837 F.2d 432, 435-36 (11th Cir.1988) (recognizing general joinder requirement in § 1441 removals). See also Wenzoski v. Citicorp, 480 F.Supp. 1056, 1058 (N.D.Cal. 1979). While able jurists may differ on whether Congress conferred original federal jurisdiction in Red Cross cases, it is abundantly clear that Congress never expressly provided a right to remove such cases.
Even where federal question jurisdiction is premised on the character of a defendant rather than the nature of the issues to be determined, the courts have applied the joinder requirement of § 1441 and its antecedents. See Matter of Dunn, 212 U.S. 374, 387, 29 S.Ct. 299, 303, 53 L.Ed. 558 (1909); Chicago Rock Island & Pacific Railway Co. v. Martin, 178 U.S. 245, 248, 20 S.Ct. 854, 855, 44 L.Ed. 1055 (1900); Edelstein v. New York Life Insurance Co., 30 F.Supp. 1, 2 (S.D.N.Y.1939) (prior to 1966 amendment expressly providing for removal of FDIC cases); Belcher v. Aetna Life Insurance Co., 3 F.Supp. 809, 811 (W.D.Tex.1933). See also Alicea v. Consolidated Rail Corp., Civ. No. 88-9238, 1989 WL 46167 (E.D.Pa. May 1, 1989); Mc- *360 Manus v. Glassman's Wynnefield, Inc., Civ. No. 89-0447 (E.D.Pa. April 28, 1989).
The Red Cross points to language in Dunn that the cause of action there being against federal and non-federal parties jointly, a "Federal character permeates the whole case," and argues that under "then prevailing law" each defendant could remove, thus distinguishing Dunn, and inferentially Martin, from the current case. The court is not persuaded. A reading of the permeation reference in context suggests that the Court was stating merely that a plaintiff's joinder of resident private parties with a federal corporation on a theory of joint liability did not destroy (pre-section 1349) removal jurisdiction or render the action as to the corporation a "separable controversy." Matter of Dunn, supra, 212 U.S. at 385-86, 29 S.Ct. at 302. Dunn and Martin continue to be cited by courts and commentators in support of the general joinder requirement in removal cases.
Finally, the Red Cross maintains that this case falls within one of the several exceptions to the joinder requirement, the exception for defendants who have not been served.[9] It relies on Lewis v. Rego Co., 757 F.2d 66 (3d Cir.1985) which it contends held that non-joinder of a party for the stated reason that it had not entered an appearance is sufficient to bring a removal case within the non-service exception. The Red Cross appears to read more into the Lewis case than can be justified. What the Court held in Lewis is that where a defendant, in fact, had not been served, an explanation in the petition that no entry of appearance had been made on its behalf did not render the removal defective. The Court found a recitation that no entry of appearance had been made sufficient to invoke the non-service exception where service actually had not been made.
The Court in Lewis did not hold, and it does not follow, that a defendant who has been served but who has not had an appearance entered on its behalf is exempt from the joinder requirement under the exception based on an absence of service. That the Court in Lewis contemplated actual non-service can be seen from its admonition to removing defendants that "it would have been preferable to have alleged non-service." Lewis, supra, at 69. The absence of an entry of appearance on behalf of a defendant who, in fact, has been served does not excuse the failure of a removing co-defendant to obtain his joinder or consent within the thirty-day period prescribed by § 1446(b). See Crompton, supra n. 2, at 701.
Accordingly, for the reasons set forth herein, the plaintiffs' motion to remand will be granted. An appropriate order will be issued.
NOTES
[1] Irigoyen v. Kaiser Foundation Health Plan, No. 89-0134 (C.D.Cal. February 13, 1989); Kaiser v. Memorial Blood Center, No. 3-88 CIV 666 (D.Minn. Feb. 7, 1989); Conway v. St. Louis Childrens Hospital, No. 86-2138(1) (E.D.Mo. July 1, 1988); Evan v. Jewish Hospital of St. Louis, No. 86-1982C(2), 1988 WL 105639 (E.D.Mo. March 28, 1988); Anonymous Blood Recipient v. Sinai Hospital, 692 F.Supp. 730 (E.D.Mich.1988); C.H. v. American Red Cross, 684 F.Supp. 1018 (E.D.Mo.1987); Smith v. Curators of the Univ. of Missouri, No. 86-1874C(a) (E.D.Mo. April 3, 1987).
[2] Vansant v. American Red Cross, No. 88-8275 (E.D.Pa. July 3, 1989); Smith v. Thomas Jefferson University Hospital, No. 88-7345, 1989 WL 73776 (E.D.Pa. June 30, 1989); Okoro v. Childrens Hospital, No. 87-2114 (D.D.C. July 12, 1988); Roche v. American Red Cross, 680 F.Supp. 449 (D.Mass.1988); Griffith v. Columbus Area Chapter of the Am. Red Cross, 678 F.Supp. 182 (S.D. Ohio 1988); Jeanne v. The Hawkes Hosp. of Mount Carmel, No. C-2-87-0509 (S.D. Ohio January 29, 1988); Walton v. Howard University, 683 F.Supp. 826 (D.D.C.1987).
[3] Act of March 3, 1875, ch. 137, § 1, 18 Stat. 470. (Periodically recodified without substantive change and currently codified at 28 U.S.C. § 1331.)
[4] See Act of June 6, 1900, ch. 784, § 2, 31 Stat. 278.
[5] The exact language of that provision was "to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all state courts having competent jurisdiction, and in any circuit court of the United States." Osborn, 22 U.S. at 817.
[6] While the courts could have raised lack of subject matter jurisdiction on their own, the parties never questioned jurisdiction or put it at issue. See D'Oench below at 117 F.2d 491 (8th Cir.1941).
[7] In this regard, it is interesting to note that in the language accompanying Recommendation No. 21 that the charter make clear that the Red Cross has the power to accept devises of real estate, the Report indicates that despite a judicial determination that it has such power it would be desirable "to eliminate any doubt."
[8] In 36 U.S.C. § 1, Congress had effectively made the organization a corporate citizen of the District of Columbia.
[9] A removing defendant need not join a co-defendant who has not been served, is merely a nominal party, has been fraudulently joined or against whom only separate and independent nonremovable claims are pending. See Wright, Miller & Cooper, supra, at ch. 7, pp. 504-510; 28 U.S.C. § 1441(c).