Florence McEVILLY, Special Administrator of the Estate of William R. McEvilly, Deceased, Plaintiff,

v.

RUSH PRESBYTERIAN ST. LUKE'S MEDICAL CENTER, John L. Showel, John L. Showel, M.D., Ltd., James A. Hunter, American Red Cross, the Blood Center of Northern Illinois, and Lifesource, Defendants.

No. 90 C 5413.

United States District Court, N.D. Illinois, E.D.

May 1, 1991.

George Freeman Galland, Jr., Mark Steven Kende, Davis, Miner, Barnhill and Galland, P.C., Ronald L. Lipinski, Thomas Hill Peckham, Timothy P. Payne, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

## I. INTRODUCTION

Plaintiff Florence McEvilly ("plaintiff") filed this action in an Illinois state court on behalf of the estate of her deceased husband, William R. McEvilly ("McEvilly"), alleging that he contracted Acquired Immune Deficiency Syndrome ("AIDS") after receiving an infusion of blood contaminated with Human Immune Deficiency Virus ("HIV"). The American Red Cross (the "Red Cross") removed the suit to federal court pursuant to its federal charter, which provides that the organization may sue or be sued in any court, state or federal. 36 U.S.C. § 2. Plaintiff has moved to remand, contending that this provision does not confer federal jurisdiction over suits against the Red Cross absent an independent jurisdictional basis. For the reasons set forth below, the Court agrees and remands this case to the Illinois court.

## II. FACTS

For purposes of the pending motion to remand, the Court assumes the allegations of the complaint to be true.

On and after July 24, 1984, McEvilly was a patient in the operating and surgical unit of Rush Presbyterian St. Luke's Medical Center ("Rush") in Chicago. While hospitalized at Rush, McEvilly received one or more infusions of blood which was contaminated with HIV. These infusions were given at the direction of defendant James A. Hunter, a physician and specialist in cardiovascular surgery. Slightly more than four years later, McEvilly was informed that he was suffering from AIDS. McEvilly died on March 10, 1989. Plaintiff asserts that defendants Rush and Hunter were negligent in infusing McEvilly with HIV-contaminated blood and in failing to take steps which might have prevented this from occurring. (Counts I—IV.)

Defendant John L. Showel is a physician and specialist in hematology/oncology. Beginning in May of 1986, Showel provided care and treatment to McEvilly. Plaintiff asserts that Showel was negligent in failing to timely diagnose McEvilly's HIV infection and to treat the opportunistic illnesses associated with that infection. (Counts V, VI.)

Defendants Red Cross and Blood Center of Northern Illinois (the "Blood Center") collect, process, and distribute blood products to health care institutions in Chicago. They supplied to Rush the HIV-contaminated blood which was administered to McEvilly. Plaintiff alleges that the Red Cross and Blood Center were negligent in distributing HIV-contaminated blood and in failing to take steps which might have prevented such blood from being administered to McEvilly. (Counts VII–VIII.) In or about January of 1987, the Red Cross and Blood Center merged and were succeeded by defendant Lifesource, which has assumed the liabilities of each of its predecessors. Consequently, plaintiff alleges that Lifesource is liable to her to the same extent as the Red Cross and Blood Center. (*Id.*)

Plaintiff filed this suit in the Circuit Court of Cook County on August 13, 1990. The Red Cross was served with summons on August 20, 1990. The Red Cross filed a notice of removal on September 13, 1990, within the 30–day period provided for in 28 U.S.C. § 1446(b), contending that 36 U.S.C. § 2 confers federal subject matter jurisdiction over this suit and that removal is therefore authorized under 28 U.S.C. § 1441.

Plaintiff has moved to remand the case to the Illinois court, contending that federal jurisdiction over this suit is lacking. No flaw has been cited in the mechanics of the removal. Rather, the sole question presented is whether or not the provisions of the Red Cross' federal charter supply federal subject matter jurisdiction over suits such as this one.

## III. ANALYSIS

■ The sole potential source of federal subject matter jurisdiction over this case lies in the statutory charter of the Red Cross. In relevant part, that charter provides:

> The name of this corporation shall be "The American National Red Cross", and by that name it shall have perpetual succession, *with the power to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States. . . .*

36 U.S.C. § 2 (emphasis supplied). Resolution of the motion to remand turns upon whether the provision that the Red Cross may sue or be sued in any United States court, state or federal, simply confers upon the Red Cross the capacity to litigate or, in addition, extends the subject matter jurisdiction of the federal courts to all cases in which the Red Cross is a party.

The federal district courts are nearly evenly divided on this issue.[1] To date, it appears that at least 19 courts have considered this question. Of these courts, eleven have concluded that the charter does *not* confer federal jurisdiction over suits to which the Red Cross is a party. *See Collins v. American Red Cross*, 724 F.Supp. 353, 354 n. 1 (E.D.Pa.1989) (collecting cases and finding no jurisdiction). *See also McCool v. American Red Cross*, 1991 WL 32857 (E.D.Pa. Mar. 6, 1991); *Torres v. Ortega*, No. 89 C 8626 (N.D.Ill. Feb. 16, 1990) (Williams, J.); *Doe v. American Red Cross*, 727 F.Supp. 186 (E.D.Pa.1989).[2] Eight others have concluded that the char-

ter *does* create federal jurisdiction. *See Collins*, 724 F.Supp. at 354 n. 2 (collecting cases). *See also Gladstone v. American National Red Cross*, Civil No. 90–145–D (D.N.H. May 24, 1990). On April 10, 1991, the Eighth Circuit joined this second camp, concluding without extensive analysis that the phrasing of the Red Cross charter is sufficient to confer federal jurisdiction. *Kaiser v. Memorial Blood Center of Minneapolis, Inc.*, No. 89–5533, slip op. at 5–6 (8th Cir. April 10, 1991). Having reviewed these authorities, this Court concludes that the former are better reasoned.

At the outset, the Court notes, as have other courts, that the "sue and be sued" provision at issue is found in a section of the statutory charter which identifies the corporation and sets forth its powers. Consequently, the context of the provision, as well as the language of the provision itself, do not constitute a plain and unambiguous grant of subject matter jurisdiction upon the federal courts; to the contrary, both are more consistent with a simple grant of authority to litigate upon the corporation. *See Anonymous Blood Recipient v. William Beaumont Hospital*, 721 F.Supp. 139, 141 (E.D.Mich.1989). *See also Bankers' Trust Co. v. Texas & Pacific Ry. Co.*, 241 U.S. 295, 305, 36 S.Ct. 569, 571, 60 L.Ed. 1010 (1916) (statutory charter providing that railway could sue or be sued in all United States courts merely conferred capacity to litigate, not "exceptional or privileged jurisdiction.")

The courts which have concluded that the charter does supply federal jurisdiction have relied primarily upon *Osborn v. United States Bank*, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824). In that case, the Bank had sued the auditor of the State of Ohio in federal court, seeking return of a tax which the state had imposed upon and seized from the Bank. The auditor claimed, *inter alia*, that the federal courts lacked jurisdiction over the dispute. However, the Su-

---

**1.** Neither the courts of appeals nor the Supreme Court have yet reached this question.

**2.** The same district courts which decided *Collins* and *Doe* have subsequently reaffirmed their

holdings in other cases. *See Carr v. American Red Cross*, 1990 WL 171528 (E.D.Pa. Nov. 1, 1990) *and Coccia v. American Red Cross*, 1990 WL 149290 (E.D.Pa. Sept. 28, 1990).

preme Court, in an opinion authored by Chief Justice Marshall, concluded that language incorporated into the statutory charter of the United States Bank sufficed to confer federal jurisdiction over suits involving the bank. Like the Red Cross charter, the charter before the Court in *Osborn* permitted the Bank "to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all State Courts having competent jurisdiction, and in any Circuit Court of the United States." *See* 22 U.S. at 317. A previous version of the charter creating the Bank's predecessor did not expressly mention the federal courts, but simply authorized the Bank to sue and be sued "in Courts of record, or any other place whatsoever"; and in *Bank of the United States v. Deveaux,* 9 U.S. (5 Cranch.) 61, 3 L.Ed. 38 (1809), the Supreme Court had found that general language insufficient to confer federal jurisdiction. However, in *Osborn,* Justice Marshall found the specific mention of the federal courts enough to require a different result:

> These words seem to the Court to admit of but one interpretation. They cannot be made plainer by explanation. They give, expressly, the right "to sue and be sued," "in every Circuit Court of the United States," and it would be difficult to substitute other terms which would be more direct and appropriate for the purpose.

22 U.S. at 317. In dissent, Justice Johnson suggested that the majority opinion was result-oriented and founded upon practical concerns:

> I have very little doubt that the public mind will be easily reconciled to the decision of the Court here rendered; for, whether necessary or unnecessary originally, a state of things has now grown up, in some of the States, which renders all the protection necessary, that the gen-

eral government can give to this Bank. The policy of the decision is obvious, that is, if the Bank is to be sustained....[3]

Nonetheless, Justice Johnson rejected the majority's conclusion that Congress had intended to convey federal jurisdiction over all suits to which the national bank was a party. He found no support for that conclusion in the language of the charter:

> [N]otwithstanding the confidence with which this point has been argued, an examination of the terms of the act, and a consideration of them with a view to the context, will be found to leave it by no means a clear case, that such is the legal meaning of the act of incorporation. To be sure, if the act had simply and substantively given the right "to sue and be sued in the Circuit Courts of the United States," there could have been no question made upon the construction of those words. But such is not the fact. The words are, not that the Bank shall be made able and capable in law, to sue, & c., but that it shall, "by a certain name," be made able and capable in law to do the various acts therein enumerated. And these words, under the force of which this suit is instituted, are found in the ordinary incorporating clause of this act, a clause which is well understood to be, and which this Court, in the case of *Deveaux,* has recognized to be, little more than the mere common place or formula of such an act....

22 U.S. at 876–77. He went on to emphasize, contrary to the majority's opinion, that the statutory language at issue was not substantively different from the language which the Court had rejected as a jurisdictional basis in *Deveaux:*

> It has been argued, and I have no objection to admit, that the phraseology of this act has been varied from that incorporating the former Bank with a

---

**3.** Echoing Justice Johnson's pragmatic spin on the majority opinion in *Osborn,* the court in *Doe* noted:

> Marshall was apparently anxious to establish the validity of a grant of federal jurisdiction in any suits by or against the Bank on ordinary commercial transactions. This concern is easily understandable. The Government

was interested as an owner in the Bank and the Bank was performing governmental service. Moreover, the Bank was the object of great popular hatred and of measures of reprisal by many state legislatures. It was sadly in need of a federal haven for its litigation.

727 F.Supp. at 189.

view to meet the decision in *Deveaux*'s case. But it is perfectly obvious, that in the prosecution of that design, the purport of *Deveaux*'s case has been misapprehended.... Whether the legislative power of the United States could extend it as far as is here insisted on, or what words would be adequate to that purpose, the case neither called on the Court to decide, nor has it proposed to decide. If any thing is to be inferred from that decision on those points, it is unfavourable to the sufficiency of the words inserted in the present act. For, the argument of the Court intimates, that where the Legislature propose to give jurisdiction to the Courts of the United States, they do it by a separate provision.... And on the words of the incorporating section [*Deveaux*] makes this remark, "that it is not understood to enlarge the jurisdiction of any particular Court, but to give a capacity to the corporation to appear as a corporation in any Court, which would by law have cognizance of the cause if brought by individuals. If jurisdiction is given by this clause to the federal Courts, it is equally given to all Courts having original jurisdiction, and for all sums, however small they be." Now, the difference of phraseology between the former act and the present, in the clause in question, is this: the former has these words, "may sue and be sued, &c. in Courts of record or any other place whatsoever;" the present act has substituted these words, "in all State Courts having competent jurisdiction, and in any Circuit Court of the United States." Now, the defect here could not have been the want of adequate words, had the intent appeared to have been to enlarge the jurisdiction of any particular Court. For, if the Circuit Courts were *Courts of record,* the right of suit given was as full as any other words could have made it. But, as the Court in its own words assigns the ground of its decision, the clause could not have been intended to enlarge the jurisdiction of the State Courts, and therefore could not have

been intended to enlarge that of the federal Courts, much less to have extended it to the smallest sum possible. Therefore it concludes, that the clause is one of mere enumeration, containing, as it expresses it, "the powers which, if not incident to a corporation, are conferred by every incorporating act, and are not understood to enlarge," &c....

*Id.* 22 U.S. at 879–80 (emphasis in original).

As many courts have recently observed, the rationale of *Osborn* has been the subject of substantial criticism. *See, e.g., McCool,* 1991 WL 32857 at *1, *citing* Bator, P., Meltzer, D., Mishkin, P., and Shapiro, D., Hart & Wechsler's *The Federal Courts and the Federal Court System* at 983–84 n. 3 (3d ed. 1988), *and* C. Wright, *Federal Courts,* § 17 n. 6 (4th ed. 1983). Indeed, the Supreme Court's own opinions cast doubt upon the continuing validity of *Osborn. See Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 492–93, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983); *Gully v. First Nat. Bank in Meridian,* 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936) (Cardozo, J.). *See also Textile Workers Union v. Lincoln Mills of Alabama,* 353 U.S. 448, 471, 77 S.Ct. 912, 928–29, 1 L.Ed.2d 972 (1957) (Frankfurter, J., dissenting).

For the reasons which other courts have articulated, this Court does not find *Osborn* controlling on the matter of federal jurisdiction over suits involving the Red Cross. First, to the extent the finding of jurisdiction of *Osborn* rested upon the premise that a suit involving a federally-chartered institution necessarily presents a federal question supplying jurisdiction, the opinion has been overruled by 28 U.S.C. § 1349, which provides:

The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock.[4]

---

**4.** The Red Cross has not issued capital stock; consequently, the perequisite to federal jurisdic-

tion imposed by § 1349 cannot be satisfied in this case. *See Collins,* 724 F.Supp. at 355.

Moreover, to the extent *Osborn* was based upon a finding of congressional intent to confer federal jurisdiction over litigation involving the Bank of the United States, evidence of a comparable intent with respect to the Red Cross is missing. The express authorization for the Red Cross to sue or be sued in federal court was added to the statutory charter in 1947. As the court observed in *Collins*, the Harriman Committee Report which proposed that change, among others, explicitly recognized the limited jurisdiction bestowed upon federal courts, and appears to have suggested the change not to expand the jurisdiction of the federal judiciary but merely to confirm that the Red Cross has the capacity to litigate in the federal courts. 724 F.Supp. at 353. *Accord Doe*, 727 F.Supp. at 191–92. At the same time, it is noteworthy that Congress failed to include in the 1947 amendment language which it did include in contemporary charters and which supplied a clear basis for federal jurisdiction. Thus, in amending the charter of the Federal Crop Insurance Corporation ("FCIC"), Congress provided not only that the FCIC could sue and be sued in federal as well as state court, but also that "jurisdiction is hereby conferred upon such district courts to determine such controversies without regard to the amount in controversy." *See Collins*, 724 F.Supp. at 357, *quoting* Act of August 1, 1974, ch. 440, 61 Stat. 719.

Again in 1948, Congress incorporated an equally express grant of federal jurisdiction into the charter of the Commodity Credit Corporation. *See* 724 F.Supp. at 358. The absence of such language from the 1947 amendments to the Red Cross charter thus confirms that it was not the intent of Congress to confer federal jurisdiction over suits by and against the Red Cross. *Id.*[5]

Finally, as the court observed in *Anonymous Blood Recipient, Osborn* must be distinguished in that it involved a "a different federal charter, a charter from a different era, with a different purpose, set in a different context." 721 F.Supp. at 143.[6] This case does not present the compelling plight of a fledgling federal entity besieged by the assaults of covetous state governments which confronted the Court in *Osborn;* to the contrary, the Red Cross is an esteemed institution. Consequently, it is appropriate to refrain from including cases such as this one within the potentially broad sweep of Justice Marshall's opinion. To hold otherwise might "federalize all Red Cross cases," *Collins*, 724 F.Supp. at 358, bestowing upon the Red Cross special access to the federal courts not enjoyed by other, similarly situated corporations, *Doe*, 727 F.Supp. at 192.

■ The Red Cross has suggested that to the extent there is any doubt as to

**5.** As it has in other suits of this nature, the Red Cross relies upon *D'Oench, Duhme & Co. v. Federal Deposit Ins. Co.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), for the proposition that the "sue and be sued" language incorporated into the Red Cross charter is sufficient by itself to supply federal subject matter jurisdiction. However, as the court observed in *Collins*, the question presented in *D'Oench* was not whether comparable "sue and be sued" language included in the FDIC's charter sufficed to provide federal jurisdiction, but whether a federal court presiding over a non-diversity case involving the FDIC should apply state or federal common law. 724 F.Supp. at 356. *See* 315 U.S. at 455, 62 S.Ct. at 678. The Supreme Court did note in *D'Oench* that jurisdiction over the case was premised upon a section of the charter which included the "sue and be sued language"; however, as the Court itself observed, that same section also expressly provided that "all suits of a civil nature at common law or equity to which the Corporation shall be a party shall be deemed to arise under the law of the United

States." *Id.* at 455–56 & n. 2, 62 S.Ct. at 678–79 & n. 2. The fact that the Court relegated its acknowledgement of the jurisdictional provision to a footnote does not, as the Red Cross argues, render that provision unimportant nor does it suggest that the Court would hold that in the absence of such a provision, the "sue and be sued" language would confer federal jurisdiction over a federally chartered corporation. *See Collins*, 724 F.Supp. at 356. *See also McCool*, 1991 WL 32857 at *2 n. 1.

**6.** The court in *Anonymous Blood Recipient* also noted that the charter provision under review in *Osborn* arguably was more consistent with a grant of federal jurisdiction in that it bestowed upon the Bank of the United States the right to sue and be sued in all state courts "having competent jurisdiction", but in *any* federal circuit court. *See* 721 F.Supp. at 143. In contrast, the charter of the Red Cross does not purport to differentiate between the jurisdiction of state and federal courts.

federal jurisdiction over this suit, this Court should tentatively exercise jurisdiction and certify an interlocutory appeal. The court addressed a similar argument in *Collins:*

Finally, the defendant argues that any uncertainty as to the existence of jurisdiction should be resolved in favor of removal because an order to remand is not appealable. The cases are legion which hold to the contrary. *See, e.g., Abels v. State Farm Fire & Casualty Co.,* 770 F.2d 26, 29 (3d Cir.1985); *Adorno Enterprises v. Federated Department Stores,* 629 F.Supp. 1565, 1573 (D.R.I.1986); *PLM, Inc. v. Consolidated Rail Corp.,* 490 F.Supp. 194, 197 (E.D. Pa.1980). Where a later determination that the district court lacked jurisdiction would make futile the federal litigation of a case, it is only prudent to resolve all doubts in favor of remand to a state court with unquestionable jurisdiction.

724 F.Supp. at 358. For these same reasons, this Court declines to retain jurisdiction in this case.

### IV. CONCLUSION

For the reasons set forth above, the Court concludes that federal subject matter jurisdiction over this case is lacking and therefore remands the case to the Circuit Court of Cook County, Illinois.