684 F.Supp. 1018 (1987)
C.H., Next Friend of K.P., a minor, Plaintiff,
v.
AMERICAN RED CROSS, a nationally chartered corporation, and Cardinal Glennon Children's Hospital, a Missouri Not-For-Profit Corporation, Defendants.
No. 86-1713C(A).
United States District Court, E.D. Missouri, E.D.
April 3, 1987.
Order on Reconsideration February 8, 1988.
*1019 *1020 Michael A. Lawder, Belleville, Ill., Gary Underwood, St. Louis, Mo., for plaintiff.
Frank N. Gundlach, Clark H. Cole, St. Louis, Mo., for defendant American Red Cross.
Kemper R. Coffelt, Clayton, Mo., for defendant Cardinal Glennon.

MEMORANDUM AND OPINION
HARPER, District Judge.
This matter is before the Court on its own motion to examine the propriety of defendants' petition for removal. Plaintiff originally filed the present suit in the Circuit Court for the City of St. Louis, State of Missouri, against the American National Red Cross (hereinafter "Red Cross") and Cardinal Glennon Children's Hospital (hereinafter "Cardinal Glennon"). In her petition, plaintiff asserts several state law causes of action seeking damages for complications allegedly arising from cryoprecipitate transfusions given to plaintiff's minor child between June 24, 1984 and April 23, 1985.
On August 22, 1986, defendants filed jointly a petition for removal in this Court. As grounds for removal by the Red Cross, defendants rely on 28 U.S.C. §§ 1349, 1441(a) and 1442(a)(1) and 36 U.S.C. § 2. Cardinal Glennon's removal is based solely upon the doctrine of pendent jurisdiction.
The Court will examine, in turn, each of the asserted statutory bases for removal.

I. 28 U.S.C. § 1349.
In the Pacific Railroad Removal Cases, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885), the Supreme Court held that "corporations of the United States, created by and organized under acts of Congress," are entitled to remove suits brought against them in the state courts to the Federal courts, "under and by virtue of the act of March 3, 1875 [predecessor of 28 U.S.C. § 1331], on the ground that such suits are suits `arising under the laws of the United States.'" Id. at 11, 5 S.Ct. at 1117. The flood of litigation resulting from that decision led Congress to enact 28 U.S.C. § 1349, which provides as follows:
"The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock."
Defendants contend that Section 1349 was never intended to apply to the "patriotic societies" chartered under Title 36, such as the Red Cross; rather Section 1349 was intended to restrict federal jurisdiction in only those suits involving federally chartered business corporations. Defendants further contend that the capital stock ownership requirement contained in the last phrase of Section 1349 is satisfied even though a corporation has not issued shares of stock when the United States has a substantial proprietary interest in a particular federal corporation.
The Federal Courts have routinely applied Section 1349 to corporations chartered under Title 36. See e.g. Burton v. United States Olympic Committee, 574 F.Supp. 517 (C.D.Cal.1983); Crum v. Veterans of Foreign Wars, 502 F.Supp. 1377 (D.Del.1980); Stop the Olympic Prison v. United States Olympic Committee, 489 F.Supp. 1112 (S.D.N.Y.1980); Rice v. Disabled American Veterans, 295 F.Supp. 131 (D.D.C.1968); Harris v. American Legion, 162 F.Supp. 700 (S.D.Ind.), aff'd 261 F.2d 594 (7th Cir.1958); Anthony Wayne Post No. 418 v. American Legion, 5 F.Supp. 395 (D.Pa.1933). Defendants nevertheless contend that the legislative history of Section 1349 clearly demonstrates the intent of Congress to restrict federal jurisdiction based upon federal incorporation to suits involving governmental business corporations. After examining the legislative history relied upon by defendants, the Court concludes that Congress drew a distinction based not upon whether a federal corporation was a business corporation or a patriotic society; rather, the distinction was made between Government-controlled corporations *1021 and privately-controlled corporations. See Jackson v. Tennessee Valley Authority, 462 F.Supp. 45, 52 (M.D.Tenn. 1978), aff'd 595 F.2d 1120 (6th Cir.1979) (Letter written by Senator Albert B. Cummins, then chairman of the Senate Judiciary Committee, to T.V. O'Connor, dated February 11, 1924). This disposes of defendants' first contention, and the Court will next consider the somewhat related question whether Section 1349's capital stock ownership requirement should be construed broadly as including federal corporations in which the United States has a substantial proprietary interest.
Many courts have examined this important question, but no definitive answer exists. Some have construed the last phrase of Section 1349 restrictively to confer federal jurisdiction only where the United States actually owns at least one-half of a corporation's issued shares of stock. See e.g. Hancock Financial Corporation v. Federal Savings and Loan Insurance Corporation, 492 F.2d 1325 (9th Cir.1974); Crum, supra; Stop the Olympic Prison, supra; Crockett Mortgage Co. v. Government National Mortgage Association, 418 F.Supp. 1081 (E.D.Pa.1976); Rice, supra; Harris, supra. Other courts, however, have refused to apply Section 1349 in such a formalistic manner, and instead, inquire whether the corporation is effectively controlled by the United States. See, e.g. Government National Mortgage Association v. Terry, 608 F.2d 614 (5th Cir.1979); United States v. Nowak, 448 F.2d 134 (7th Cir.1971), cert. denied, 404 U.S. 1039, 92 S.Ct. 714, 30 L.Ed.2d 731 (1972); Jackson, supra; Monsanto v. Tennessee Valley Authority, 448 F.Supp. 648 (N.D.Ala.1978). After careful consideration, the Court finds the latter interpretation to be more persuasive.
Although Section 1349 purports to confer federal jurisdiction in suits involving corporations in which "the United States is the owner of more than one-half of its capital stock," Congress' use of the term "capital stock" is ambiguous. See Jackson, supra, at 52-53. The term is sometimes used when referring to shares of corporate stock, but it also denominates the fund of money or other property fixed by the corporate charter or articles of incorporation as the amount available for conducting the business of a corporation. See 18 C.J.S. Corporations, § 193, 614-615 (1939). The courts which have concluded that federal jurisdiction exists only if the United States actually owns more than one-half of a corporation's shares of stock have uniformly failed to perceive this ambiguity, and additionally failed to consider congressional intent. "When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no `rule of law' which forbids its use, however clear the words may appear on `superficial examination.'" Train v. Colorado Public Interest Research Group, Inc., 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976) (citations omitted.)
The initial draft of what later became Section 1349 was incorporated as Section 12 of a bill introduced by Senator Albert B. Cummins, then Chairman of the Senate Judiciary Committee. This initial draft contained what is now the first section of Section 1349. The last phrase of Section 1349, the capital stock ownership requirement, was added after correspondence between Senator Cummins and T.V. O'Connor, then vice chairman of the United States Shipping Board Emergency Fleet Corporation. After receiving a letter from O'Connor which pointed out the obvious federal interest in preserving federal jurisdiction in suits involving federal corporations, Senator Cummins responded:
"Section 12 is obviously too broad. As you may know, there is a provision in Section five of the Act of January 28, 1915 of similar import, confined to railroad companies. It is a very proper provision when limited to private corporations, but of course, it should not be extended to government corporations or to corporations in which the government has the controlling interest."
Jackson, supra at 52 (letter from Albert B. Cummins to T.V. O'Connor, dated February 11, 1924). A short time later, the Senate Judiciary Committee proposed amending Section 12 to its present form. The *1022 report accompanying the proposed amendment stated that Section 12's initial jurisdictional limitation "should be somewhat restricted." S.Rep. No. 362, 68th Cong., 1st Sess. 4 (1924).
The foregoing legislative history demonstrates that Section 1349 was intended to confer federal jurisdiction on suits involving all "Government-controlled corporations", and not only those corporations controlled by the government by virtue of majority stock ownership. This construction of Section 1349 is not inconsistent with the use of the term "capital stock" in the statute, and, furthermore, it avoids elevating form over substance. For purposes of Section 1349, there is no real difference between a corporation controlled by the United States, and a corporation in which the United States has a majority stock ownership. In view of this conclusion, the Court's next task is to determine whether the United States effectively controls the Red Cross.
The Red Cross is a "national society" of the International Red Cross. It is a membership corporation, first chartered by Congress in 1900. Congress created the Red Cross in order to fulfill the undertakings of the United States as a contracting party to the Geneva treaties of 1864 and following, relating to the amelioration of the sick and wounded of the armies. Sturges, The Legal Status of the Red Cross, 56 Mich.L. Rev. 1 (1957). The original Act creating the Red Cross was superceded by the Act of 1905, which incorporated a majority of the original Act's provisions, but totally revised the organization's governing structure. The preamble of the 1905 Act declared that "* * * it is believed that the importance of the work demands a repeal of the present charter and a reincorporation of the society under Government supervision."
The governing body of the Red Cross has taken many forms since 1905, but here we are concerned only with its present structure. Since 1947, the Red Cross has been controlled through its Board of Governors. The Board is composed of fifty persons: Eight appointed by the President of the United States, thirty elected at the national convention of the local chapters, and twelve elected by the Board to serve as "members-at-large." The President additionally designates one of his eight appointees to serve as "chairman" of the Board. The Board possess "all powers of government, direction and management of the corporation." 36 U.S.C. § 6.
The fact that the President appoints only eight of the fifty persons who govern the Red Cross indicates that the Red Cross is not controlled by the Government. Furthermore, the Government's role in the corporation's activities is expressly restricted by the corporation's ongoing association with the International Red Cross. In order for a national society to be recognized by the International Red Cross, several conditions must be met. One such condition is that all national societies, including the American National Red Cross, must remain institutions "whose autonomous status allows [them] to operate in conformity with the fundamental principles of the Red Cross, as formulated by the International Red Cross Conference." I.R.C. Handbook at 319. The status of the Red Cross vis-a-vis the International organization requires that the corporation remain independent of the United States. This fact was acknowledged by the Honorable Basil O'Connor, former chairman of the Red Cross, as follows:
"* * * the International Red Cross Committee has always maintained that the national societies, while cooperating closely and cordially with their own governments and with other agencies, should at the same time remain independent."
Annual Report of the American National Red Cross (1946).
The Court concludes that, although the Red Cross serves a vital national interest and cooperates closely with the United States Government, it nonetheless functions independently and is in no way controlled by the Government. The Court, therefore, holds that Section 1349 acts to bar jurisdiction based solely upon the fact of federal incorporation.

*1023 II. 28 U.S.C. § 1442(a)(1).

The Red Cross has also relied on 28 U.S.C. § 1442(a)(1) as a basis for its removal. That statute provides:
"§ 1442. Federal officers sued or prosecuted.
"(a) A civil or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
"(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue."
The Red Cross contends that it is entitled to remove this suit on the grounds that it is a federal agency within the meaning of the statute and, alternatively, because it acts under federal officers in discharging its responsibilities. For the reasons discussed below, the Court rejects both of these contentions.
As an initial matter, there appears to be a split in the authorities as to whether agencies of the United States, as opposed to just officers of federal agencies, may remove under Section 1442(a)(1). A number of courts have concluded that federal agencies are entitled to remove under the statute, see e.g. IMFC Professional Services of Florida, Inc. v. Latin American Home Health, Inc., 676 F.2d 152 (5th Cir.1982); Township of Middletown v. N/E Regional Office, USPS, 601 F.Supp. 125 (D.N.J.1985); Monal Construction Co. v. Brookside Limited Partnership, 539 F.Supp. 478 (W.D.Pa.1982); James River Apartments v. Federal Housing Administration, 136 F.Supp. 24 (D.Md.1955), while others have reached the contrary conclusion, see e.g. Woodward v. Turnage, 646 F.Supp. 219 (E.D.Mo.1986); Gensplit Finance Corp. v. Foreign Credit Insurance Ass'n, 616 F.Supp. 1504 (E.D.Wis.1985); City of Alma v. Bell, Galyardt & Wells, Inc., 606 F.Supp. 686 (D.Neb.1985); Lowe v. Norfolk & W. Ry. Co., 529 F.Supp. 491 (S.D.Ill.1982); Brewer v. Department of Housing & Urban Development, 508 F.Supp. 72 (S.D.Ohio 1980); KCPO Employees Credit Union v. Mitchell, 421 F.Supp. 1327 (W.D.Mo.1976). As we are bound to follow prior decisions of the Eastern District of Missouri which are on point, the Court hereby adopts the reasoning in Woodward, supra, and holds that agencies of the United States are not entitled to remove under Section 1442(a)(1).
Furthermore, if agencies could remove under the statute, the Red Cross would still be unable to remove under Section 1442(a)(1) because it is not an agency of the United States. For purposes of Title 28, the term "agency" is defined in 28 U.S.C. § 451. That statute provides:
"The term `agency' includes any department, independent establishment, commission, administration, authority, board or bureau of the United States, or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense."
In Part I of this opinion, the Court considered whether the Government controls the Red Cross, and concluded that although the corporation acts in the national interest, it is nonetheless independent of the Government. The Red Cross, therefore, does not come within the definition of "agency" contained in 28 U.S.C. § 451 requiring that the Government have a proprietary interest in the corporation.
The Red Cross also asserts that because some members of its Board of Governors are officers of the United States, and because the corporation acts under the direction of the Board of Governors, it may properly remove as a "person acting under [an officer of the United States] * * *." After carefully reviewing the pertinent case law, the Court does not agree that the term "person" as used in Section 1442(a)(1) includes entities other than natural persons. Rather than restating what the *1024 Court believes to be the proper analysis of this issue, the Court hereby adopts the reasoning set forth in Gensplit Finance Corp. v. Foreign Credit Insurance Ass'n, 616 F.Supp. 1504, 1508-10 (E.D.Wis.1985), and holds that the Red Cross cannot rely on Section 1442(a)(1) as the basis for its removal.

III. 36 U.S.C. § 2.
The final statutory basis relied upon by the Red Cross for removal is 36 U.S.C. § 2, the Act under which Congress incorporated the Red Cross. That statute, in pertinent part, provides that the Red Cross shall have "the power to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." The Red Cross contends that this provision confers original federal subject jurisdiction in all suits in which the Red Cross is a party.
Generally, a provision in a corporate charter which confers the right to sue and be sued creates a capacity to litigate in the corporation. F.R.Civ.P. 17(b). Several "sue-and-be-sued" clauses have nevertheless been found to confer federal subject matter jurisdiction. See D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); Osborn v. Bank of the United States, 22 U.S. (9 Wheat) 251, 6 L.Ed. 204 (1824). In those cases, the Court concluded that the "sue-and-be-sued" clause was a grant of federal jurisdiction by virtue of the fact that the clause expressly authorized suit in the federal courts.
Osborn, supra, involved the question whether or not Congress conferred federal jurisdiction on the Bank of the United States in the Act incorporating said Bank. The Act authorized the Bank "to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all state courts having competent jurisdiction, and in any circuit court of the United States." In holding that this language conferred federal jurisdiction, the Court stated:
"These words seem to the Court to admit of but one interpretation. They cannot be made plainer by explanation. They give, expressly, the right `to sue and be sued,' `in every circuit court of the United States,' and it would be difficult to substitute other terms which would be more direct and appropriate for the purpose."
22 U.S. at 254. The Court distinguished a case involving the Bank's predecessor, Bank of the United States v. Deveaux, 9 U.S. (5 Cranch) 61, 3 L.Ed. 38 (1809), on the ground that while the charter of the original bank allowed it to "sue and be sued, in courts of record or any other place whatsoever," it made no reference to the federal courts and, therefore, merely conferred a general capacity in the Bank to sue. Osborn stands for the proposition that "sueand-be-sued" clauses confer federal jurisdiction if they expressly authorize suit in the federal courts. The Court reaffirmed this proposition in Bankers Trust Co. v. Texas and Pacific Railway Co., 241 U.S. 295, 303-05, 36 S.Ct. 569, 570-71, 60 L.Ed. 1010 (1916) (charter giving railroad power to sue and be sued "in all courts of law and equity within the United States" suffers from "same generality" as in Deveaux).
Turning now to the language in 36 U.S.C. § 2, the Court belives that these words constitute an express grant of original federal jurisdiction. Unlike the language involved in Deveaux and Bankers Trust Co., 36 U.S.C. § 2 specifically refers to the Federal courts, and unlike the language in Bor-Son Building Corp. v. Heller, 572 F.2d 174 (8th Cir.1978) and Ames-Ennis, Inc. v. Midlothian, Ltd. Partnership, 469 F.Supp. 939 (D.Md.1979), 36 U.S.C. § 2 does not seem to contemplate outside sources of jurisdictional authority.
The Court's conclusion is amply confirmed by the legislative history of 36 U.S. C. § 2. The 1947 charter amendment which added the phrase "State or Federal" was based squarely upon a recommendation contained in the Harriman Committee Report, S.Rep. No. 38, 80th Cong., 1st Sess. 1 (1947); H.R.Rep. No. 337, 80th Cong., 1st Sess. 6 (1947). That recommendation provided.
"Suit in the Federal Courts.

*1025 "Recommendation No. 22. The Charter should make clear that the Red Cross can sue and be sued in the Federal Courts.

"The present Charter gives the Red Cross the power `to sue and be sued in courts of law and equity within the jurisdiction of the United States.' The Red Cross has in several instances sued in the Federal Courts and its powers in this respect have not been questioned. However, in view of the limited nature of the jurisdiction of the Federal Courts, it seems desirable that this right be clearly stated in the Charter."
Report of the Advisory Committee on Organization at 35-36 (June 11, 1946). In view of the language in 36 U.S.C. § 2, legislative history and the prior decisions of the Supreme Court, the Court holds that the statute incorporating the Red Cross confers original federal subject matter jurisdiction of those claims asserted against the Red Cross.

IV. 28 U.S.C. § 1441(c).
The Court's final inquiry concerns whether any of the claims joined in the petition are removable because the Court has original jurisdiction of the claims against the Red Cross. 28 U.S.C. § 1441(c) addresses the situation where removable claims are joined with otherwise non-removable claims in one action. That statute provides:
"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."
28 U.S.C. § 1441(c).
In Section III of this memorandum, the Court concluded that the statute incorporating the Red Cross confers original Federal subject matter jurisdiction of those claims asserted against the Red Cross. Those claims, therefore, "would be removable [under 28 U.S.C. § 1441(a)] if sued upon alone." The Court is still left to consider whether the claims against the Red Cross are "separate and independent" from the otherwise non-removable claims asserted against the other defendants.
In American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), the Supreme Court articulated the standard applicable for determining whether a claim which would be removable if sued upon alone is "separate and independent" from the non-removable claims joined in the petition as follows:
"* * * where there is a single wrong to plaintiff for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)."
Id. at 14, 71 S.Ct. at 540.
After carefully considering the pleadings in this case, the Court concludes that the claims asserted against the Red Cross are not separate and independent from the claims asserted against the other defendants for purposes of Section 1441(c). The pleadings indicate a single wrong to plaintiff for which relief is sought, i.e. contamination with the AIDS virus.
According, the lawsuit was improperly removed to this Court, and the case is remanded to the Circuit Court of the City of St. Louis, State of Missouri, for further proceedings.
This order, in the opinion of the Court, involves a controlling question of law as to which there is substantial ground for differences of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, and it is, therefore, ordered that the defendants herein may make application for appeal under the provisions of 28 U.S.C. § 1292(b), and if appeal is permitted, the proceedings herein are stayed until further order.

ORDER
In accordance with the Memorandum and Order of the Court this day filed, which is incorporated in and made a part of this Order:
*1026 It is hereby ORDERED, ADJUDGED and DECREED that the lawsuit was improperly removed to this Court, and the case is remanded to the Circuit Court of the City of St. Louis, State of Missouri.
In the opinion of the Court, this Order involves a controlling question of law as to which there is substantial ground for differences of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.
Accordingly, it is hereby further ORDERED that the defendants herein may make application for appeal under the provisions of 28 U.S.C. § 1292(b), and if appeal is permitted, the proceedings herein are stayed until further order.

ORDER ON RECONSIDERATION
This matter is before the Court on the motion of defendant, The American Red Cross (hereinafter Red Cross), for reconsideration of this Court's Order of April 3, 1987, remanding this case to the State Court, and to retain jurisdiction over at least the Red Cross.
Under the Court's Order of April 3, 1987, it was provided that the defendants could make an application for an appeal under the provisions of 28 U.S.C. § 1292(b), and if appeal were permitted, the proceedings herein would be stayed until further order.
The record discloses that a petition was filed in this case by said defendant, The Red Cross, on April 13, 1987, for leave to take an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). It was considered by the Eighth Circuit Court of Appeals and denied on May 15, 1987.
Upon consideration by the Court of defendant's said motion for reconsideration of this Court's Order of April 3, 1987, it is the Court's order that said Order of April 3, 1987 in this case will remain in effect as originally entered by this Court.
It is further ordered that said Order of April 3, 1987 is final and this case is accordingly remanded to the Circuit Court of the City of St. Louis, Missouri, as of this date.