James O. **LUCKETT,** Janice Luckett, Individually and in behalf of their minor daughter, Jania Luckett, Plaintiffs,

v.

**HARRIS HOSPITAL–FORT WORTH,** et al., Defendants.

No. Civ. A. 4–91–124–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

June 21, 1991.

Lowell Edward Dushman, Jack A. Friedman, Dushman & Friedman, P.C., Fort Worth, Tex., for plaintiffs.

Rod Patterson, Cantey & Hanger, Fort Worth, Tex., Billie Ballangee, Cowles & Thompson, Dallas, Tex., Maxine M. Harrington, Gould Broude & Nelson, Fort Worth, Tex., James Bruce Warren, Sharla J. Frost, Andrea M. Johnson, Holtzman & Urquhart, Houston, Tex., Bruce M. Chadwick, Mary B. De Rosa, Arnold & Porter, Edward Wolf, Associate General Counsel, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

Came on to be considered the above-styled and numbered action. Having examined the record as a whole, the court has concluded that, for the reasons stated below, this action should be remanded to the state court from which it was removed.

### I. Background

After commencing this action in state court on December 11, 1990, plaintiffs, James O. Luckett and Janice Luckett, individually and in behalf of their minor daughter, Jania Luckett, filed their second amended original petition on January 17, 1991, naming as defendants, American Red Cross Blood Services—Red River Region, American Red Cross National Headquarters (collectively referred to as the "Red Cross"), Harris Hospital–Fort Worth, Carter Blood Center, James Watts, M.D., and Gulf Coast Regional Blood Center. Plaintiffs allege that defendants negligently gave Janice Luckett and her minor daughter, Jania Luckett, blood contaminated with the Human Immunodeficiency Virus ("HIV").[1] Thereafter, on February 19, 1991, the Red Cross filed a notice of

---

1. The HIV causes Acquired Immune Deficiency Syndrome ("AIDS"). Plaintiffs allege that Janice Luckett and Jania Luckett developed AIDS as a result of having received the contaminated blood through blood transfusions and that Jania Luckett received the contaminated blood in utero. Second Amended Original Petition, ¶ 3.

removal alleging that federal subject matter jurisdiction exists pursuant to 36 U.S.C. § 2 and, therefore, the Red Cross is entitled to remove this action under 28 U.S.C. § 1441. On April 25, 1991, the court, after reviewing the record *sua sponte*, allowed the parties to submit memoranda addressing the issue of subject matter jurisdiction. Submissions were filed on behalf of the Red Cross and plaintiffs. The court notes that diversity jurisdiction does not exist nor does this case present a substantive federal question.

## II. Lack of Subject Matter Jurisdiction

■ Subject matter jurisdiction is the legal authority of a court to hear and decide a particular type of case. Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, it must decline to exercise jurisdiction. Fed.R.Civ.P. 12(h). Furthermore, inasmuch as federal courts are courts of limited jurisdiction, *Owens Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978), there is a presumption against federal court jurisdiction. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). The party seeking to invoke federal jurisdiction has the burden of proof to demonstrate that subject matter jurisdiction does exist. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921); *McNutt*, 298 U.S. at 189, 56 S.Ct. at 785. With these

principles in mind, the court turns to a consideration of the jurisdiction issue.

■ Subject matter jurisdiction of this court is premised on 36 U.S.C. § 2, which provides in relevant part:

§ 2. Name of corporation; powers

The name of this corporation shall be "The American National Red Cross", and by that name it shall have perpetual succession, with the power to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States; . . . .

The Red Cross maintains that by virtue of this clause "federal subject matter jurisdiction is conferred upon the Red Cross." *See* Notice of Removal, ¶ 4. Consequently, the question before the court is whether 36 U.S.C. § 2 in fact confers on the court subject matter jurisdiction in this action within the meaning of 28 U.S.C. § 1441.[2]

After examining 36 U.S.C. § 2 and the context within which it is found,[3] the court, noting its concurrence with those courts which have previously found that § 2 does not confer federal jurisdiction, *see, e.g.*, *Anonymous Blood Recipient v. William Beaumont Hosp.*, 721 F.Supp. 139 (E.D. Mich.1989), holds that § 2 confers only the general capacity to litigate, rather than to confer an exceptional or privileged jurisdiction. The interpretation that the "sue and be sued" clause[4] of 36 U.S.C. § 2 bestows only the capacity to litigate is consistent with the context within which the clause is found.[5] As the context indicates, Congress

---

**2.** There has been a split among the courts on this very issue since the influx of blood contamination cases in 1987. Illustrative of the decisions finding that 36 U.S.C. § 2 does not confer federal jurisdiction are *Doe v. American Red Cross*, 727 F.Supp. 186 (E.D.Pa.1989); *Collins v. American Red Cross*, 724 F.Supp. 353 (E.D.Pa. 1989); *Anonymous Blood Recipient v. William Beaumont Hosp.*, 721 F.Supp. 139 (E.D.Mich. 1989); and *Roche v. American Red Cross*, 680 F.Supp. 449 (D.Mass.1988). In contrast, *Rivera Gonzalez v. Commonwealth of Puerto Rico*, 726 F.Supp. 10 (D.Puerto Rico 1989); *Kaiser v. Memorial Blood Center of Minneapolis, Inc.*, 724 F.Supp. 1255 (D.Minn.1989); *Anonymous Blood Recipient v. Sinai Hosp.*, 692 F.Supp. 730 (E.D. Mich.1988); and *C.H. v. American Red Cross*, 684 F.Supp. 1018 (E.D.Mo.1987) are illustrative

of decisions finding that federal jurisdiction is conferred by 36 U.S.C. § 2.

**3.** The legislative history of 36 U.S.C. § 2 is located in S.Rep. No. 38, 80th Cong., 1st Sess. 1 (1947); H.R.Rep. No. 337, 80th Cong., 1st Sess. 6 (1947), *reprinted in* 1947 U.S.Code Cong.Serv. 1028; and Recommendation No. 22 of the Report of the Advisory Committee on Organization, pp. 35–36 (June 11, 1946).

**4.** Normally a "sue and be sued" clause within a corporate charter merely creates in the corporation a capacity to litigate. *See* Fed.R.Civ.P. 17(b).

**5.** *See, e.g., Bankers Trust Co. v. Texas & Pac. Ry.*, 241 U.S. 295, 303–04, 36 S.Ct. 569, 570, 60 L.Ed. 1010 (1916) (using the context of the "sue and be sued" clause as a means of interpretation).

was concerned with the creation and operating procedures of the Red Cross as a corporation, not the expansion of federal court jurisdiction. 36 U.S.C. § 1 *et seq.*

In support of its argument that 36 U.S.C. § 2 confers federal jurisdiction, the Red Cross points to the fact that the original language of § 2—"sue and be sued in courts of law and equity within the jurisdiction of the United States"—was amended in 1947 so that the words "State or Federal" were inserted after "courts of law and equity." [6] To bolster its reading of the 1947 amendment, the Red Cross refers to Recommendation No. 22 of the Report of the Advisory Committee on Organization (the "Harriman Committee"), which provides:

> Recommendation No. 22. The Charter should make it clear that the Red Cross can sue and be sued in the Federal Courts.
>
> The present Charter gives the Red Cross the power "to sue and be sued in courts of law and equity within the jurisdiction of the United States." The Red Cross has in several instances sued in the federal Courts, and its powers in this respect have not been questioned. However, in view of the limited nature of the jurisdiction of the Federal Courts its seems desirable that this right be clearly stated in the Charter.

Recommendation No. 22 of the Report of the Advisory Committee on Organization, pp. 35–36 (June 11, 1946); *see also* S.Rep. No. 38, 80th Cong., 1st Sess. 1 (1947); H.R. Rep. No. 337 80th Cong., 1st Sess. 6 (1947), *reprinted in* 1947 U.S.Code Cong.Serv. 1028. Contrary to what the Red Cross maintains, the language of Recommendation No. 22 is ambiguous at best as to whether the 1947 amendment was intended by Congress to confer federal jurisdiction. *See Collins v. American Red Cross,* 724

F.Supp. 353, 357 (E.D.Pa.1989). As discussed below, Congress, at the time of the 1947 amendment, clearly knew how to specifically provide for the conferral of federal jurisdiction.

If the purpose of the amended "sue and be sued" clause had been to take suits by and against the Red Cross out of the usual jurisdictional restrictions, it is reasonable to assume that Congress would have expressed that purpose by specific language. *Cf. Bankers Trust Co. v. Texas & Pac. Ry.,* 241 U.S. 295, 303, 36 S.Ct. 569, 570, 60 L.Ed. 1010 (1916). Particularly instructive on this point is the legislation amending the charter of the Federal Crop Insurance Corporation ("FCIC"), which was enacted by the same Congress that amended the "sue and be sued" clause of the Red Cross charter in 1947. Congress provided that the FCIC "may sue and be sued in its corporate name in any court of record of a State having general jurisdiction, or in any United States district court, *and jurisdiction is hereby conferred upon such district court to determine such controversies without regard to the amount in controversy.*" [7] The court deems it most improbable that Congress would utilize language such as that in 36 U.S.C. § 2 in order to confer federal jurisdiction in Red Cross cases, and then, almost simultaneously, use specific language to confer federal jurisdiction in FCIC cases.

Another example of specific language utilized by Congress to confer federal jurisdiction is found in the Federal Deposit Insurance Corporation ("FDIC") . charter, which is dealt with in *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In *D'Oench,* jurisdiction was premised on 12 U.S.C. § 264(j), [8] which authorized the FDIC to sue or be sued "in any court of law or equity, State or Feder-

---

**6.** The Red Cross "sue and be sued" clause of 36 U.S.C. § 2 was originally enacted on January 5, 1905, c. 23, § 2, 33 Stat. 600, and amended on May 8, 1947, c. 50, § 3, 61 Stat. 81.

**7.** *See* Act of August 1, 1947, c. 440, § 7, 61 Stat. 719, *reprinted in* 1947 U.S.Code Cong.Serv. 1542 (emphasis added) (current version at 7 U.S.C. § 1506(d)).

**8.** The FDIC was originally created as a part of the Federal Reserve Act by Act on June 16, 1933, c. 89, § 8, 48 Stat. 168, which added § 12B to the Federal Reserve Act, Act December 23, 1913, c. 6, 38 Stat. 103, and was codified at 12 U.S.C. § 264(j).

al." [9] Some courts have said that the "sue and be sued" clause of § 264(j) conferred subject matter jurisdiction on federal courts. *See, e.g., C.H. v. American Red Cross,* 684 F.Supp. 1018, 1024 (E.D.Mo. 1987). However, the FDIC charter goes much further. In addition to giving the FDIC the right to sue and be sued, Congress expressly provided that *"[a]ll suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States...."* [10] The Red Cross attempts to minimize, as it has in other cases, *see, e.g., Collins v. American Red Cross,* 724 F.Supp. 353, 356 (E.D. Pa.1989), the specific language utilized by Congress to confer federal jurisdiction in the FDIC charter by arguing that the Supreme Court in *D'Oench* "relegated that provision to a footnote." Such rationale is unpersuasive to say the least.

Courts have relied on *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), in the process of holding that a "sue and be sued" clause, such as that in 36 U.S.C. § 2, confers subject matter jurisdiction on district courts. *See, e.g., Anonymous Blood Recipient v. Sinai Hosp.,* 692 F.Supp. 730, 733 (E.D.Mich. 1988); *C.H. v. American Red Cross,* 684 F.Supp. 1018, 1024–25 (E.D.Mo.1987). In *Osborn,* the United States Supreme Court found that Congress conferred original federal jurisdiction by utilizing a provision similar to the one mentioned above in the charter of the Second Bank of the United States.[11] *Osborn,* 22 U.S. at 818. *Osborn* is distinguishable from the case at bar inasmuch as it interpreted a different federal charter from another era, within its own context. The charter at issue in *Osborn* also had a different purpose.[12] Moreover,

**9.** This provision is currently located at 12 U.S.C. § 1819(a) Fourth.

**10.** *See* Banking Act of August 23, 1935, ch. 614, § 101, 49 Stat. 684 (emphasis added), which amended the Banking Act of June 16, 1933, ch. 89, § 8, 48 Stat. 168. Significantly, the original Banking Act of 1933 provided, in language almost identical to that in the Red Cross charter, that the FDIC would have the power "to sue and be sued, complain and defend, in any court of law or equity, State or Federal." Subsequently, the language "shall be deemed to arise under the laws of the United States" was added through amendment by the Banking Act of August 23, 1935. The Senate Committee on Banking and Currency makes clear, through its report, the purpose of the amendment—to confer federal subject matter jurisdiction in FDIC cases. *See* S.Rep. No. 1007, 74th Cong., 1st Sess. 5; *FDIC v. George–Howard,* 153 F.2d 591, 593 (8th Cir.1946), *cert. denied,* 329 U.S. 719, 67 S.Ct. 53, 91 L.Ed. 623 (1946); *Collins v. American Red Cross,* 724 F.Supp. 353, 356 (E.D.Pa.1989); and *Walton v. Howard University,* 683 F.Supp. 826, 828 (D.D.C.1987).

**11.** The provision at issue in *Osborn* allowed the bank "to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all state courts having competent jurisdiction, and in any circuit court of the United States." *Osborn,* 22 U.S. at 817.

**12.** *See Textile Workers v. Lincoln Mills,* 353 U.S. 448, 481, 77 S.Ct. 912, 933, 1 L.Ed.2d 972 (1957) (Frankfurter, J., dissenting) (stating that "Marshall's holding [in *Osborn* ] was undoubtedly influenced by his fear that the bank might suf-

fer hostile treatment in the state courts that could not be remedied by an appeal on an isolated federal question."). The impetus behind Marshall's broad sweeping holding in *Osborn* is also discussed in a perceptive article written over a half century ago, which states:

> The [*Osborn* ] opinion was an achievement characteristic of Marshall. If the Act did permit the Bank to sue in the courts of the United States, the specific case before the Court was clearly one arising under the Constitution because the plaintiff invoked a constitutional right which was alleged to have been violated by the defendant. No more had to be decided to dispose of the actual case. But Marshall was apparently anxious to establish the validity of a grant of federal jurisdiction in any suits by or against the Bank on ordinary commercial transactions. The concern is easily understandable. The Government was interested as an owner in the Bank and the Bank was performing governmental service. Moreover, the Bank was the object of great popular hatred and of measures of reprisal by many state legislatures. It was sadly in need of a federal haven for its litigation. The doctrinal channel leading to that haven was quite obvious, once discovered. Whatever the claim it made, a suit by the Bank raised a federal question; for in any suit, the capacity of the Bank to sue, its capacity to contract or to own property, was an issue to be decided or assumed in the Bank's favor. These ever present federal questions were sufficient to sustain constitutionality, once it was decided that Congress did grant jurisdiction of that scope. They were sufficient to tinge any case by the Bank with

although the *Osborn* rationale has not been overruled, it has been the subject of substantial criticism,[13] especially by the Supreme Court. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 492–93, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983); *Gully v. First National Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936); *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 485, 53 S.Ct. 447, 450, 77 L.Ed. 903 (1933); *see also* C. Wright, *Federal Courts* § 17 n. 6 (4th ed. 1983); P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, *Hart & Wechsler's The Federal Courts and the Federal System* 983–84 (3rd ed. 1988). Finally, the *Osborn* court did not have the benefit of knowledge of the sharp contrast between the language Congress used to create nothing more than a "sue and be sued" clause, on the one hand, and a conferral of federal jurisdiction clause, on the other. As noted above, the 80th Congress made clear the kind of statutory language to be expected when conferral of federal jurisdiction is intended.

In support of the proposition that 36 U.S.C. § 2 confers federal jurisdiction, the Red Cross cites to *Kaiser v. Memorial Blood Center of Minneapolis, Inc.*, No. 89–5533, slip op., —— F.2d —— ("Order for Certification") (8th Cir. April 10, 1991). Memorandum Regarding Subject Matter Jurisdiction, pp. 7–8. The slip opinion, or more accurately the "Order for Certification" as it is entitled, is an order by the 8th Circuit Court of Appeals certifying certain questions for decision by the Minnesota Supreme Court. In the process of certifying particular questions, the 8th Circuit

affirmed the lower court, *see Kaiser v. Memorial Blood Center of Minneapolis, Inc.*, 724 F.Supp. 1255 (D.Minn.1989), and held that 36 U.S.C. § 2 confers federal jurisdiction. The court, for the reasons mentioned in this memorandum opinion, is not persuaded by the analysis in *Kaiser*, and inasmuch as this court is not bound in any way by a decision rendered by another circuit, the court chooses not to follow the *Kaiser* decision. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 1981); 1B J. MOORE, J.D. LUCAS & T.S. CURRIER, MOORE'S FEDERAL PRACTICE ¶ 0.402[1] (2d ed. 1991).

In passing, the court notes its agreement with the observation in *Collins v. American Red Cross*, 724 F.Supp. 353, (E.D.Pa. 1989), that a pronouncement of federal jurisdiction being conferred by 36 U.S.C. § 2 would arguably open at least one "floodgate" of suits to federal courts by federalizing all Red Cross cases. *Id.* at 358. This could result not only in the emerging wave of contaminated blood cases being added to the dockets of federal courts, in addition, personal injury cases involving allegedly defective conditions on Red Cross premises or negligent acts by Red Cross agents and employees and every contract dispute between a supplier and a Red Cross chapter would be added as well. *Id.* Finally, the court's conclusion that 36 U.S.C. § 2 does not confer federal jurisdiction is consistent with the thrust of Congressional policy to limit federal jurisdiction to those situations where federal law controls. *See Doe v. American Red Cross*, 727 F.Supp. 186, 192 (E.D.Pa.1989). Such a policy is sound be-

---

federal color so as to enable a federal court to deal with all its "questions of fact or law."

In the *Pacific Railroad Removal Cases* [115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319], decided in 1885, the Court applied the [*Osborn*] doctrine to what may seem to be a similar situation abstractly, but certainly not practically. The suits were ordinary actions for personal injuries against a railroad incorporated under a federal act. The railroad was permitted to invoke federal jurisdiction, by removal, because, as in the *Osborn* case, the federal act giving the railroad legal life and capacities was at the foundation of any suit by or against it. The railroad was owned privately. It was performing no governmental functions. There was no comparable need of a federal

forum.... The decision in these Cases in favor of federal jurisdiction—a triumph of mechanical logic, rather than statesmanship as in the *Osborn* case—diverted a large stream of non-federal litigation to the federal courts and excited strong local opposition.

Shulman and Jaegerman, *Some Jurisdictional Limitations on Federal Jurisdiction*, 45 Yale L.J. 393, 404–06 (1936) (footnotes omitted).

**13.** The *Osborn* decision has been described as "one of the most inscrutable [decisions] in the history of Supreme Court jurisprudence." *Roche v. American Red Cross*, 680 F.Supp. 449, 451 (D.Mass.1988).

cause it promotes the balance of authority between state and federal courts as well as comity and respect for state law, which are essential ingredients of the federal system. *Id.*

### III. Failure to Join All Defendants in Removal

 There is another reason why removal of this action is improper. As a general rule, all defendants must join in the notice of removal in order to effectuate proper removal. *Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen and Assistants' Local 349,* 427 F.2d 325, 326–27 (5th Cir.1970); *Northern Illinois Gas Co. v. Airco Indus. Gases,* 676 F.2d 270, 272 (7th Cir.1982). Furthermore, well-established policy dictates that, generally, ambiguities are construed against removal when there is a doubt as to the right to removal in the first instance.[14] *See Butler v. Polk,* 592 F.2d 1293, 1296 (5th Cir.1979); *Jones v. General Tire & Rubber Co.,* 541 F.2d 660, 663 (7th Cir.1976).

 Attached to the Notice of Removal in the instant case, is a "Notice of Non–Opposition to Removal" through which the Red Cross alleges that all defendants in this action were contacted prior to removal and that "[t]hose defendants do not oppose the removal by Red Cross." While it may be true that consent to removal is all that is required under 28 U.S.C. § 1446, a defendant himself must consent to the removal. *Getty Oil Corp. v. Insurance Co. of North America,* 841 F.2d 1254, 1262 n. 11 (5th Cir.1988). This does not mean that each defendant must sign the original notice of removal, but there must be some timely "written indication" from each served defendant, or from some representative purporting to have authority to formally act on the defendant's behalf in this respect, showing that the defendant has actually consented to such removal.[15] *Id.* at 1262 n. 11. In the instant case, nothing in the record, other than the unsupported Notice of Non–Opposition to Removal attached to the Notice of Removal, indicates that other defendants have indeed consented to removal.[16]

### ORDER

For the reasons stated above, the court has concluded that the removal was improper and that the action should be remanded to the state court from which it was removed. A judgment in accordance with the memorandum opinion and order will be signed this day.

The court, therefore, ORDERS that the above-styled and numbered action be, and is hereby, remanded to the state court from which it was removed.

---

**14.** There are two reasons for this policy. First, deference should be given to the plaintiff's choice of forum. Second, valuable judicial resources are wasted when a district court's decision that removal was proper is ultimately overturned on appeal after a full trial on the merits.

**15.** Such a requirement serves the purpose of binding the consenting defendant on the record. *Getty Oil Corp. v. Insurance Co. of North America,* 841 F.2d 1254, 1262 n. 11 (5th Cir.1988).

**16.** Under a recognized exception to the general rule, Gulf Coast Regional Blood Center need not have been joined in the notice of removal inasmuch as it had not been served with state court process. *P.P. Farmers' Elevator Co. v. Farmers Elevator Mutual Ins. Co.,* 395 F.2d 546, 547 (7th Cir.1968).